**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| GREGORY HUNT, | * | |
| #Z-521 | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| vs. | * | CIVIL ACTION NO.12-00752-WS-B |
| | * | |
| WALTER MYERS, | * | |
| | * | |
| **Defendant.** | * | |

## REPORT AND RECOMMENDATION

Plaintiff, Gregory Hunt, proceeding *pro se* and *in forma pauperis*, filed a complaint seeking relief under 42 U.S.C. § 1983. (Doc. 1).  This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on Defendant Walter Myers' Motion for Summary Judgment. (Docs. 53, 54, 62).[1]  After careful consideration of the motion, pleadings, briefs, and materials submitted in support of and in opposition to, the motion, the undersigned recommends that Defendant's Motion for Summary Judgment be **GRANTED** and that this action be **DISMISSED** with prejudice.

---

[1] Also pending before the Court is Plaintiff's Motion for the Issuance of an Immediate Injunction. (Doc. 71). Because the undersigned finds that Defendant's motion should be granted, and this action dismissed with prejudice, it is recommended that Plaintiff's motion seeking immediate injunctive relief based on the claims raised in his lawsuit be **denied.**

## I.      SUMMARY OF FACTUAL ALLEGATIONS

From its review of the record, the Court summarizes the allegations that are material to the issues addressed in this Report and Recommendation. [2]   At all times relevant to the complaint, Plaintiff Gregory Hunt was incarcerated as a death row inmate at Holman Correctional Facility. (Doc. 23).   Hunt initiated this action in December 2012 based on alleged religious discrimination at the Holman Correctional Facility[3].   According to Hunt, he is a member of an inmate led Sunday class called "Anointed Heart", a "non-mainstream Christian sect"  whose beliefs are different in some respects from mainstream Protestants. [4]  (Docs. 23, 58).   Hunt alleges that the

_____

[2] For summary judgment purposes, the Court's analysis must begin with a description of the facts in the light most favorable to Hunt, who is the non-moving party. See Skrtich v. Thornton, 280 F.3d 1295, 1299 (11th Cir. 2002). "[T]he 'facts,' as accepted at the summary judgment stage of the proceedings, may not be the 'actual' facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n.3 (11th Cir. 2000).

[3] In addition to his original complaint (Doc. 1), Hunt filed a couple of amended complaints. (Docs. 11, 23). Currently before the Court is Hunt's last amended complaint (Doc. 23), which is the operative pleading in this action.

[4] It is not at all clear from the pleadings and other materials the differences which exist between the beliefs of non-mainstream "Anointed Heart" group and the Protestants; except it is suggested that the "Anointed Heart" group believes in teaching early Christianity whereas mainstream Christians purportedly do not.  (Doc. 66 at 9.). According to Plaintiff, back in 1995 he was kicked out of a volunteer led church service for being "too Christian", and after filing a lawsuit regarding the volunteer led services, he was permitted, to start the Sunday class called "Anointed Heart" in 1998. (Doc. 58 at 1-2).

Defendant has "creat[ed] an excessive burden that is prohibiting [his] free exercise of religion, in a discriminatory manner." (Doc. 23 at 7). Specifically, Hunt contends that prison officials discontinued the "Anointed Heart" class in  March of 2009 after an inmate fight, and that the only connection between the fight and the class was that both occurred on a Sunday. (Id. at 5; Doc. 58). When the  "Anointed Heart" class was resumed in July 2010, the Chaplain imposed a new policy which prohibited the group from meeting without the presence of free world volunteers. (Id.) Plaintiff asserts that this has imposed a "substantial burden" on the group's ability to exercise their religion because volunteers have other obligations which prevent them from attending regularly, and as a result, it impacts the ability of the "Anointed Heart" group to exercise their religion by meeting on a "regular basis, missing ability to meet for [their] communion day, and other holy days . . . that [they] hold fundamental to [their] faith and spiritual growth." (Doc. 23 at 5). Plaintiff further asserts that during a meeting with the Warden in November 2011, the Warden said that he would remedy the situation; however, all he did was to talk to the volunteers, who started to show up for the meetings, and then slacked off again. (Id. at 6). According to Plaintiff, because of the requirement of a volunteer, the "Anointed  Heart" class is meeting no more than twice a week. (Id. at 8.)

Plaintiff contends that the "Anointed Heart" class is being treated differently because in September 2012, the Warden overruled

3

the Chaplain's policy that required a free world volunteer at the Islam class meetings, and that other groups on death row are allowed to meet in the dayroom without the presence of a volunteer or security officer. While Hunt acknowledges that the prison has security concerns for which the free world volunteers may be necessary, he asserts that the "Anointed Heart" class has been losing members because the volunteers do not show up, and he fears that the policy requiring free world volunteers in their meetings could result in "mainstream theology" being forced on their group. (Id. at 8). For relief, Plaintiff requests the elimination of the policy requiring a free world volunteer so that the "Anointed Heart" class can meet regularly without the need for a free world volunteer. (Id.)

Defendant Walter Myers filed an answer, special report, and sworn affidavits denying that Hunt's right to exercise his religion or his right to equal protection has been violated. (Docs. 53, 54).[5] Defendant Myers contends that Plaintiff has several avenues available to him through which he can exercise his religion. Along with Defendant's Special Report, the sworn affidavit of Christopher Summers, the Chaplin at the Holman facility, was submitted in support of the Special Report. (Doc. 54-4) According to Summers, the Alabama Department of Corrections ("ADOC")does not make a distinction between

---

[5] At Plaintiff's request, Defendant Warden Walter Myers was substituted for Tony Patterson on September 26, 2014 as Tony Patterson retired from the Alabama Department of Corrections as Warden at the Holman facility, and Myers has assumed Patterson's duties at the facility. (Docs. 54, 59).

individual sects or denominations within each recognized religion, and as Chaplin, it is his responsibility to allocate time for religious services as equally as possible to all religions, given he number of practitioners and the availability of religious volunteers. (Doc. 54-4).

Summers further asserts that ADOC's records reflect that Plaintiff is a "declared practitioner of Protestantism", and that death row inmates who desire to participate in Protestant services can attend inmate-led services, supervised by a number of religious volunteers on Sundays from 7am to 10 am, as well as services on Monday and Friday nights, which are conducted by volunteers from a number of different churches and ministries.  Summers also asserts that Protestant Christians are approved for additional services on Easter, Good Friday and Christmas by Administrative Regulation # 333, and that volunteers are trained to refrain from proselytizing during the services. (Id.) Summers avers that to the extent Plaintiff wishes to further study his non-mainstream Christian beliefs, he is permitted to purchase books and study materials, and can utilize free time in the day room and exercise yard to study or meet with fellow practitioners to share his non-mainstream beliefs.  Additionally, Summers asserts that pursuant to Administrative Regulation #333, Islamic inmates are permitted a Friday Jumu'ah prayer service, from 11:30 am to 2:30 pm, without a volunteer, because Jumu'ah is a required practice for Muslims, and the Islamic group does not have a

religious volunteer available to come to Holman for their services. (Doc. 54-4 at 2).

In an Order dated October 2, 2014, the Court converted Defendant's Special Report and Answer into to a Motion for Summary Judgment, notified Plaintiff of his rights and responsibilities under Rule 56 of the Federal Rules of Civil Procedure, and afforded the parties an opportunity to respond. (Doc. 62). Subsequently, on October 28, 2014, Hunt filed an Objection to Defendants' Motion for Summary Judgment, and again argued that the policy requiring a free world volunteer is discriminatory and should be eliminated. (Doc. 66). Plaintiff also argued for the first time that Defendant violated his statutory rights under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"). (Id.) In support of his opposition to Myers' summary judgment motion, Plaintiff included unsworn statements by inmates Earl J. McGahee and Anthony Tyson[6]. (Id. at 4-6)

---

[6] Although the statements are not sworn nor made under penalty of perjury, the Court has summarized the contents of them since for the most part, they are cumulative of the assertions contained in Plaintiff's amended complaint and other filings. (Doc. 66 at 4-6). McGahee asserts that prior to mid-2007, Plaintiff was permitted to lead a discipleship class for the "Anointed Heart" group on Sundays, that the Jumu'ah group was permitted to meet on Fridays, and at that time, both groups were permitted to meet without a volunteer. After a fight broke out, the classes were discontinued until it was determined that the fight had nothing to do with the religious classes. When the classes resumed, both classes were required to have volunteers in order to meet. Later, the volunteer requirement was lifted for the Jumu'ah class, but it continues to exist for the "Anointed Heart" group. According to McGahee, their Sunday class has

In his reply, Myers asserts that at this stage in the proceedings, Plaintiff should not be permitted to amend his amended complaint by raising, for the first time, a RLUIPA claim in his response to Defendant's motion seeking Summary Judgment. (Doc. 67). Myers further asserts that in any event, Plaintiff has failed to meet his burden of establishing a genuine issue of material fact under the Free Exercise Clause, the Equal Protection Clause, or the RLUIPA. The Court finds that Defendant's motion is now ripe for resolution.

## II.  **STANDARD OF REVIEW**

Summary Judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see* Anderson v.

---

always been an inmate-conducted class, with Plaintiff as the overseer, and him as the co-leader, and they teach their own, baptize their own and ordain their own. McGahee asserts that it is fundamental for the "Anointed Heart" group to meet weekly on Sunday, to have an agape love feast twice a year, to partake in communion on the first Sunday. He further asserts that "[i]t is a faith killer, when [they] try to meet and change only to find [they] cannot meet due to present policy", and that as a result of the policy, their numbers have diminished substantially. (Id. at 4-5)

Inmate Tyson's statement contains many of the same assertions as those made by inmate McGahee. According to Tyson, he is a member of "Anointed Heart", and they believe in early Christianity teachings, and believe that "organized [C]hristianity is corrupt, and presents many false teachings that are not truly [C]hristian.". He asserts that their group was allowed to meet without a volunteer until an inmate fight that did not involve their class, that the Jumu'ah class and other groups are allowed to meet without a volunteer, that being able to meet, sing and encourage each other is fundamental to the group's faith, and that due to the lack of volunteers, their class membership has declined dramatically. (Id. at 6).

Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Garczynski v. Bradshaw, 573 F.3d 1158, 1165 ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'"(emphasis in original)).

> The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Id. at 322-24.

> Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See* Anderson, 477 U.S. at 255.

ThyssenKrupp Steel USA, LLC v. United Forming, Inc., 926 F. Supp. 2d 1286, 1289-90 (S.D. Ala. Jan. 29, 2013) (citations omitted).

In considering whether Defendant is entitled to summary judgment in this case, the Court views the facts in the light most favorable

to Plaintiff. _Comer v. City of Palm Bay, Florida,_ 265 F. 3d 1186, 1192 (11th Cir. 2001) ("We view the evidence and all factual inferences raised by it in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-moving party.").

The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts. A genuine dispute requires more than "some metaphysical doubt as to material facts." _Garczynski,_ 573 F.3d at 1165 (internal citations omitted). A "mere scintilla" of evidence is insufficient; the nonmoving party must produce substantial evidence in order to defeat a motion for summary judgment. Id. In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." _Resolution Trust Corp. v. Dunmar Corp.,_ 43 F.3d 587, 599 (11th Cir. 1995). More importantly, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." _Scott v. Harris,_ 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007); _see also Logan v. Smith,_ 439 F. App'x 798, 800 (11th Cir. Aug. 29, 2011) ("In cases where opposing parties tell different versions of the same events one of which is blatantly contradicted by the record—such that no reasonable jury could believe

it—a court should not adopted the contradicted allegations." (citations omitted) (unpublished)).

## III. DISCUSSION

As a preliminary matter, the undersigned observes that although the Court is required to liberally construe a pro se litigant's pleadings, the Court does not have "license to serve as de facto counsel for a party . . . or to rewrite an otherwise deficient pleading in order to sustain an action." GJR Invs., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted), overruled on other grounds by Randall v. Scott, 610 F.3d 701 (11th Cir. 2010); see also Giles v. Wal-Mart Distrib. Ctr., 359 F. App'x 91, 93 (11th Cir. 2009) (internal citations and quotations omitted) ("Although pro se pleadings are held to a less strict standard than pleadings filed by lawyers and thus are construed liberally, this liberal construction does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action.").

As discussed above, Plaintiff seeks redress pursuant to 42 U.S.C. § 1983 for an alleged constitutional deprivation and statutory violation arising out of the prison's denial of his nonmainstream Christian group, "Anointed Hearts"' ability to meet and hold class without the presence of free world

volunteers.[7] (Doc. 23).   Defendant Myers denies that Plaintiff's rights have been violated. (Docs. 54, 67).

The undersigned has conducted a careful review of all evidence contained in the record, and finds that Myers has met his evidentiary burden in this case and demonstrated the absence of any genuine issue of material fact with respect to the claims presented by Plaintiff. Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. <u>Clarks v. Coats & Clark, Inc</u>., 929 F. 2d 604, 608 (11th Cir. 1991). Because Plaintiff has failed to demonstrate a genuine issue of material fact, Defendant Myer's summary judgment motion is due to be granted.[8]

---

[7] Section 1983 provides in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.

[8] In his amended complaint, Plaintiff asserts that he is

11

## A. First Amendment Claim

The First Amendment, which was made applicable to the states through the Fourteenth Amendment, provides, in relevant part, that government shall not prohibit the free exercise of religion. U.S. Const. amend I; Cantwell v. Connecticut, 310 U.S. 296, 303, 60 S. Ct. 900, 903, 84 L. Ed. 1213 (1940). In O'Lone v. Estate of Shabazz, the United States Supreme Court recognized that "'convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison.'" O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (quoting Bell v. Wolfish, 441 U.S. 520, 545 (1979)). "Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." Id. (citations omitted). However, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Id.

---

suing Myers in his official capacity. While state officials are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages in their official capacities, see Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir. 1995). Plaintiff has not requested any monetary damages. Instead, he seeks an order directing Myers to permit the Anointed One group to hold classes without the presence of a free world volunteer. (Docs. 23, 54 at 1, 2) "Official capacity suits for prospective relief to enjoin state officials from enforcing unconstitutional acts are not deemed to be suits against the state and thus are not barred by the Eleventh Amendment." Scott Taylor, 405 F.3d 1251,1255 (11th Cir. 2005).

(citation and internal quotation marks omitted). Although prison inmates retain protections afforded by the First Amendment's Free Exercise Clause, prison officials may impose limitations on an inmate's exercise of sincerely held religious beliefs if the limitations are "reasonably related to legitimate penological interests." Id. at 349 (citation and internal quotation marks omitted). In evaluating prisoners' constitutional challenges to prison regulations, "courts have accorded wide-ranging deference to prison administrators in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Lawson v. Singletary, 85 F.3d 502, 510 (11th Cir. 1996) (citation and internal quotation marks omitted). Accordingly, "[t]o ensure that courts afford appropriate deference to prison officials . . . prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." O'Lone, 482 U.S. at 348 (citation omitted). The Supreme Court in Turner v. Safley, established four factors for determining the reasonableness of a regulation:

> (1) whether the regulation has a valid, rational connection to a legitimate governmental interest; (2) whether alternative means are open to inmates to exercise the asserted right; (3) what impact an accommodation of the right would have on guards and

13

inmates and prison resources; and (4) whether there
are ready alternatives to the regulation.

Turner v. Safley, 482 U.S. 78, 89-91, 107 S. Ct. 2254, 2262, 96
L. Ed. 2d 64 (1987).  The fourth factor considers whether "a
prisoner has pointed to some obvious regulatory alternative that
fully accommodates the asserted right while not imposing more
than a *de minimis* cost to the valid penological goal." Overton
v. Bazzetta, 539 U.S. 126, 136, 123 S. Ct 2162, 156 L. Ed. 2d
162 (2003)(citation omitted).  This standard ensures that
correctional officers will have the ability "'to anticipate
security problems and to adopt innovative solutions to the
intractable problems of prison administration,' *ibid*., and
avoids unnecessary intrusion of the judiciary into problems
particularly ill suited to 'resolution by decree.'" O'Lone, 482
U.S. at 349. Consequently, the defendant does not have the
burden of proving the validity of an administrative action or
security decision; rather, the burden is on the plaintiff to
disprove it. Turner, 482 U.S. 89-91.

In this case, Hunt has not demonstrated that the ADOC
policy requiring that the "Anointed Heart" have free world
volunteers in attendance at their Sunday class has impinged on
his ability to practice his religion within the confines of the
prison, nor has he shown that this policy is unreasonable.  That
is, first, Hunt has not shown that this regulation does not have

14

a valid, rational connection to a legitimate governmental
interest.   In this case, there is no dispute that prison
officials have a clear interest in allocating resources in
order to maintain order and overall security in the prison.
Indeed, Plaintiff concedes that the policy requiring the
presence of a free world volunteer was instituted after an
inmate fight, and that prisons have security concerns that could
justify the need to have free world volunteers in prisoner-
conducted religious classes. (Doc. 23 at 7).   Further, the
facility has to allocate time for religious services amongst all
religious groups as equally as possible, and must take into
account the number of practitioners and the availability of
religious volunteers. (Docs. 54-3 at 2; 54-4 at 3)   Moreover,
alternative means are open to Plaintiff to exercise his right to
practice his religion. (Doc. 54-4 at 3).   "An inmate's free
exercise right does not 'depend upon his ability to pursue each
and every aspect of the practice of his religion." Osuna v.
Clark, No. 1:05-CV-173-MEF, 2007 WL 2461903 at * 8 (M.D. Ala.
Aug. 29, 2007)(citing Canedy v. Boardman, 91 F.3d 30, 33 (7th
Cir. 1996)).   The record reflects that a number of Protestant
based services are open to Plaintiff and other "Anointed Heart"
members including an inmate led Sunday morning service, as well
as Protestant services on Monday and Friday evenings, conducted
by volunteers from a number of different churches and

ministries. (Doc. 54-4 at 2).  Further, Protestants are afforded additional services on their approved sacred days, such as Easter, Good Friday and Christmas. (Id.). Hunt may also "study whatever religious material he likes within his cell and possess approved religious items, or congregate with other inmates during day-room or yard time." (Id. at 3).  See Overton, 539 U.S. at 135 ("Were it shown that no alternative means of communication existed, though it would not be conclusive, it would be some evidence that the regulations were unreasonable. That showing, however, cannot be made.").

While Hunt contends that he is not Protestant, and that the "Anointed Heart" class practices Christian teachings different from mainstream Christianity, ADOC records indicate that Hunt's declared religion is Protestantism (Christianity) and Hunt does not refute the fact that his beliefs fall under the ambit of Christianity. (Doc. 54-1).  In seeking to allocate time for religious services as equally as possible to all religions, ADOC does not make a distinction between individual sects or denominations within each recognized religion. The fact that Plaintiff's individual beliefs do not line up perfectly with the teachings of the mainstream Christian groups is of no moment given that Christian services are available to him, that his "Anointed Heart" class is allowed to meet on Sunday whenever a volunteer is available, and that he can possess books and visit

16

with like-minded believers during free time in the day room or on the exercise yard[9]. See Boxer X v.Donald, 169 Fed. Appx. 555, 560 (llth Cir. 2006)("Because the DOC regulation, which provides prisoners with a generic religious service for a given religion and not a separate service for the denominations or sects, is reasonably related to the DOC's penological interest in not overburdening its resources, the district court did not err by granting summary judgment to the defendants on the plaintiff's First Amendment claim.")  Thus, the policy of requiring a free world volunteer to be present at the "Anointed Heart" Sunday class  does not substantially burden or significantly interfere with Plaintiff's  ability to engage in the free exercise or practice of his religion. He has therefore failed to establish a violation of his First Amendment rights.  Consequently, summary judgment is due to be granted in favor of Defendant on this claim.

**B. Equal Protection Claim**

The Equal Protection Clause requires that the government treat similarly situated people in a similar manner.  See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313 (1985).  "To establish an equal

---

[9] While Plaintiff asserts that in 1995, he was kicked out of a religious service, he has not alleged let alone put forth any evidence that suggests that he is not permitted to attend the inmate led Christian service that is conducted on Sundays, or the other Christian services held at the facility.

protection claim, a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis." Sweet v. Sec'y Dep't of Corr., 467 F.3d 1311, 1318–19 (11th Cir. 2006) (citation omitted); see Damiano v. Fla. Parole & Prob. Comm'n, 785 F.2d 929, 932-33 (11th Cir. 1986) (noting that to establish an Equal Protection claim, the Appellant must establish that he is similarly situated to other inmates who did not have their parole extended and that the appellee engaged in invidious discrimination).  Plaintiff's equal protection claim must fail because he has not shown that he was treated differently from other, similarly situated prisoners.  In his amended complaint, Plaintiff alleges that "Anointed Heart" class is being treated differently than similarly situated groups, namely Project Hope and Muslim inmates.  (Doc. 23 at 6).  However, these groups are not similarly situated.  While Plaintiff's class, "Anointed Heart", is not permitted to meet without a volunteer, the record does not reflect that any other sect or subgroup of a larger religious group is being permitted to meet without a free world volunteer. (Doc. 54-4).

With respect to the weekly Jumu'ah prayer services, the record reflects that the weekly Jumu'ah prayer services are

required by the Muslim faith and are therefore mandated by the ADOC Administration Regulation Number 333 ("AR #333"). (Doc. 54-4 at 2). Furthermore, unlike inmates such as Plaintiff, who practice Christianity, the Islamic group does not have religious volunteers available to come to Holman for its prayer service. In addition, Plaintiff does not assert, and the record does not reflect that there are alternative Islamic services that are available to Islamic inmates at the Holman facility. In addition, Project Hope is a non-denominational group organized for the purpose of eliminating the death penalty. (Id. at 2). Because it is not considered a religious group, it is not afforded time on the Religious Activities calendar coordinated by the Chaplain. (Id.). Meetings for that group require the approval of the security staff. (Docs. 54 at 12, 54-3, 54-4). Accordingly, Plaintiff has not demonstrated that he has been treated differently than similarly situated inmates.

Even if Plaintiff had shown that he had been treated differently than similarly situated inmates, he has not proffered facts that suggest that he was treated differently as a result of invidious discrimination tied to a constitutionally protected interest. See Schwarz v. City of Treasure Island, 544 F.3d 1201, 1212 n.6 (11th Cir. 2008) (noting that "the equal protection clause prohibits only intentional discrimination."); see also Cruz v. Skelton, 543 F.2d 86, 92-93 (5th Cir. 1976)

(affirming dismissal of prisoner's equal protection claim because there was no allegation of "'invidious discrimination' based on such considerations as race, religion, national origin, or poverty."); Muhammad v. Sapp, 388 F. App'x. 892, 899 (11th Cir. 2010) (prison officials did not violate Equal Protection Clause by providing Jewish inmates with kosher diet and not providing Muslim inmates with halal diet; facts viewed in light most favorable to Muslim inmate did not establish that prison's decision to serve kosher meals but not halal meals was the product of intentional discrimination). Plaintiff has not established a genuine issue of material fact regarding his Equal Protection Claim. Accordingly, this claim must also fail.

**C. RLUIPA**

While Plaintiff did not reference RLUIPA in his amended complaint(Doc. 23), *[p]ro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). In light of Plaintiff's *pro se* status and the fact that his amended complaint contains key language found in the statute, namely that prison officials placed a "substantial burden" on his ability to exercise his religion, the undersigned will consider his RLUIPA claim below. (Doc. 23 at 5).

Section 3 of RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability." 42 U.S.C.A. § 2000cc-1(a)(1). To set forth a *prima facie* case under section 3 of RLUIPA, "a plaintiff must demonstrate 1) that he engaged in a religious exercise; and 2) that the religious exercise was substantially burdened." Smith v. Allen*,* 502 F.3d 1255, 1276 (11th Cir. 2007), abrogated in part by, Sossamon v. Texas, 131 S. Ct. 1651, 179 L. Ed. 2d 700 (2011). This standard is applied with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security, and discipline, consistent with consideration of costs and limited resources." Cutter v. Wilkinson, 544 U.S. 709, 723, 125 S. Ct. 2113, 2123, 161 L. Ed. 2d 1020 (2005). In Smith, the court defined the plaintiff's "religious exercise" as the practice of his religion and thus, did not limit definition of "religious exercise" to a particular act of worship. Smith, 502 F.3d at 1277.

If the plaintiff establishes a *prima facie* case, the government must then show that the challenged government practice is "in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that

compelling governmental interest." Id. at 1266.  As noted supra,
Plaintiff has repeatedly asserted that he practices "non-
mainstream Christianity." (Docs. 23, 67).  And, "[d]efendants do
not dispute that Hunt's practice of 'non-mainstream
Christianity' constitutes a religious exercise." (Doc. 67 at 2).
Accordingly, Plaintiff has met the first prong of his prima
facie case under RLUIPA.  However, Plaintiff's claim must fail
on the "substantial burden" element required by RLUIPA.  As the
court in Smith explained:

> We have previously defined a "substantial burden"
> as being "significant pressure which directly coerces
> the religious adherent to conform his or her behavior
> accordingly." More pertinent to the present action, we
> have made clear that, in order to constitute a
> "substantial burden" on religious practice, the
> government's action must be "more than . . .
> incidental" and "must place more than an inconvenience
> on religious exercise." That is, to constitute a
> substantial burden under RLUIPA, the governmental
> action must significantly hamper one's religious
> practice.

Smith, 502 F.3d at 1277(citations omitted).  The requirement
that the "Anointed Heart" inmate-led Sunday class be supervised
by free world volunteers has not burdened or restricted Hunt's
ability to exercise his religion.  He is able to practice his
religion in many ways.  As he has done on at least one occasion,
Hunt may attend and lead the prisoner conducted services held on
Sunday mornings. (Doc. 54 at 3).  Protestant services conducted
by volunteers are also held on Monday and Friday evenings and

"Protestants are afforded additional services on their approved sacred days as time and space permits." (Id.).  Additionally, Plaintiff "may study on his own, or meet with other inmates when they are allowed in the day room or on the yard." (Id.). Plaintiff may also encourage free world members of his particular sect to engage in the process to become volunteers for the "Anointed Sunday" class. (Id. at 11).  Simply put, Plaintiff has not established that the regulation requiring free world volunteers in the Anointed Sunday class constitutes a substantial burden on his ability to exercise his religion. Thus, he has failed to state a claim under RLUIPA.

## II.     CONCLUSION

For the reasons set forth above, the undersigned concludes that Defendant Walter Myers is entitled to summary judgment. Accordingly, it is recommended that Defendant's Motion for Summary Judgment be **GRANTED**, that this action be **DISMISSED** with prejudice, and that judgment be entered in favor of Defendant Walter Myers and against Plaintiff Gregory Hunt.

## Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within

fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. ALA. Gen. L.R. 72.(c).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

   **DONE** this **30th** day of **September, 2015.**

                        _____/s/ SONJA F. BIVINS_____
                        **UNITED STATES MAGISTRATE JUDGE**